UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MACK ENERGY COMPANY,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 16-1696 |
| RED STICK ENERGY, LLC, ET AL.,<br>    Defendants | SECTION "E" (1) |

## ORDER AND REASONS

Before the Court is a Motion for Certification Under 28 U.S.C. § 1292(b) and Motion for Stay filed by Defendants, Natrona Resources, L.L.C., Dixie Management Services, L.L.C., Albert W. Gunther, Jr., as trustee of The R E Trust, Martha Gunther, as trustee of The R E Trust, Old South Mechanical, L.L.C., Old South Ventures, L.L.C., Albert W. Gunther, Jr., and Albert W. Gunther, III (collectively, "Movants").[1] Mack Energy Company ("Mack") opposes this motion.[2] Movants filed a reply.[3] For the following reasons, Movants' motion is **DENIED**.

## BACKGROUND

This case arises out of the drilling of an oil and gas well in the Main Pass 21 Prospect.[4] Mack seeks to recover the costs of drilling, testing, plugging, and abandoning a dry hole.[5] Mack alleges Red Stick Energy, LLC ("Red Stick") purchased a 26.5% interest in the Main Pass 21 Prospect and entered into a participation agreement and a joint operating agreement with Mack.[6] Red Stick and Gunther, Jr. allegedly agreed to form an entity, Main Pass 21, LLC ("Main Pass"), to which Red Stick would transfer its 26.5%

---

[1] R. Doc. 266.
[2] R. Doc. 271.
[3] R. Doc. 277.
[4] R. Doc. 191 at ¶ 4.
[5] *Id.* at ¶¶ 37, 38.
[6] *Id.* at ¶¶ 20.

1

interest in the Main Pass 21 Prospect.[7] Gunther, Jr. and Red Stick agreed Main Pass would be funded 90% by Natrona Resources, L.L.C ("Natrona"), of which Gunther, Jr. is a member, and 10% by Red Stick.[8] In its Fifth Amended and Superseding Complaint, Mack (1) brings a breach of contract claim against Red Stick, (2) brings a detrimental reliance claim against Gunther, Jr., and (3) alleges Main Pass assumed the obligations of Red Stick under the PA and JOA.[9] In response, Gunther, Jr. filed a Motion to Dismiss for Failure to State a Claim, or Alternatively Motion for Summary Judgement.[10]

Red Stick has filed crossclaims and third party complaints against Movants.[11] Red Stick alleges: "Subsequent to the determination that the well was a dry hole, Defendant Albert W. Gunther, Jr. individually and/or as manager of Natrona and Dixie Management Services, L.L.C. [("Dixie")], and in turn, Defendant Main Pass, declined to pay any of the remaining drilling costs for the Main Pass 21 Prospect."[12] Red Stick brings breach of contract and detrimental reliance claims against Movants, and seeks to hold Movants liable through piercing the corporate veil and/or an alter ego theory of liability.[13] In response, Movants filed a Motion to Dismiss for Failure to State a Claim, or Alternatively, Motion for Summary Judgment, as to Red Stick's amended crossclaim and second amended third party complaint.[14]

On June 3, 2019, Mack filed a motion to compel discovery, requesting Gunther, Jr., Gunther, III, Main Pass, Natrona, Dixie, Old South Mechanical, LLC ("Old South

---

[7] *Id.* at ¶¶ 11-12.
[8] *Id.* at ¶ 13.
[9] R. Doc. 191.
[10] R. Doc. 199.
[11] R. Doc. 169; R. Doc. 170.
[12] R. Doc. 169 ¶ 9; R. Doc. 170 ¶ 9.
[13] R. Doc. 169; R. Doc. 170.
[14] R. Doc. 181.

Mechanical"), Old South Ventures, LLC ("Old South Ventures"), and Gunther, Jr. and Martha Gunther as trustees of RE Trust be ordered to supplement their responses to written discovery propounded by Mack.[15] Movants opposed this motion.[16] Mack filed a reply.[17] On July 24, 2019, the Magistrate Judge heard oral argument regarding this motion.[18] Several objections were resolved during oral argument, and the Magistrate Judge took under submission the remaining issues concerning whether discovery into the alter ego and corporate veil piercing issues would be allowed.[19] As the Magistrate Judge stated, with respect to these remaining issues, Mack sought the following information:

1) Identification of the owners of each of the Gunther Parties, their proportionate share of ownership, the consideration paid, and the date each interest was acquired, as well as all documents related to the ownership interest or financial or business relationship with such party;

2) As to each of the Gunther Parties except Main Pass, whether the party directly or indirectly funded Main Pass or Barber's Hill, LLC;

3) Identification of all assets, liabilities, sources of income, and net worth of Main Pass;

4) Whether any of the Gunther Entities directly or indirectly funded Main Pass and if so, all documents pertaining thereto;

5) Bank statements of Main Pass from date of opening through end of March 2019 (only December 2015 and January 2016 have been produced) and bank statements of Natrona, Dixie, and Gunther, Jr. from June 2015 through the end of March 2019;

6) 2015 through 2018 federal tax returns for Gunther, Jr., and the Gunther Entities;

7) Formation documents for Old South Ventures, Old South Mechanical, RE Trust, Natrona, and Dixie (those of Main Pass had already been produced); and

---

[15] R. Doc. 177.
[16] R. Doc. 194.
[17] R. Doc. 205.
[18] R. Doc. 214.
[19] *Id.*; R. Doc. 225 at 1.

3

8) Identification and description of any transfers or loans between any of the Gunther Parties and any guarantees or cosigns of any obligations of the Gunther Parties along with any documents evidencing such loans.[20]

On July 26, 2019 the Magistrate Judge granted Mack's motion to compel.[21] Specifically, the Magistrate Judge ordered: "The Gunther Parties shall supplement their discovery responses as requested by Mack, except as to the category 1, which requests are narrowed to documents reflecting (a) the owner's investments and (b) any funds transferred between the owner and the entity. The Gunther Parties may produce their responses pursuant to a protective order limiting their use and disclosure." The Magistrate Judge explained: "The court finds that each of these categories seeks information that is relevant to the alter ego claims. Only one is overbroad—the request for "all documents" related to ownership interests or financial or business relationships in category 1."[22]

On August 9, 2019, Movants appealed the Magistrate Judge's decision.[23] Mack argued the Magistrate Judge's ruling was correct.[24] During a telephone status conference held on August 28, 2019, this Court affirmed in part the Magistrate Judge's Order and Reasons granting the Motion to Compel filed by Mack.[25] The Court reversed in part the Magistrate Judge's Order and Reasons as follows:

1) Albert Gunther, Jr. will not be required to produce his personal income tax returns for the years 2015 through 2018. Instead, he will produce his Forms 1040, with Schedule C, for those years.

2) Albert Gunther, Jr. will produce his personal bank statements for in-camera review by the Court by providing a hard copy of an unredacted version of the bank statements and a redacted version of the bank statements, together with a list of

---

[20] R. Doc. 225 at 12.
[21] R. Doc. 225.
[22] *Id.* at 12.
[23] R. Doc. 242.
[24] R. Doc. 258.
[25] R. Doc. 262.

4

bank account numbers for Albert Gunther, Jr. and all entities named in this action.[26]

With respect to the first category of documents, the Court held irrelevant portions may be redacted.[27] The Court ordered both categories of documents be produced by no later than Wednesday, September 18, 2019 at 5:00 p.m.[28] The Court further ordered the parties to file a joint motion for the entry of a protective order by no later than Friday, August 30, 2019 at 5:00 p.m.[29]

On September 7, 2019, Movants filed the instant motion for certificate of appealability and motion to stay.[30] Movants ask the Court to certify its August 28, 2019 discovery order, regarding Movants' appeal of the Magistrate Judge's decision granting Mack's motion to compel, to allow an interlocutory appeal.[31] Movants argue they should not be required to produce "confidential tax returns and bank statements" that are "based upon conclusory allegations challenged by pending Rule 12(b)(6) motions."[32] Movants additionally seek a stay of the Court's ruling while the instant motion and the interlocutory appeal are pending.[33]

## LAW AND ANALYSIS

### I. Motion for Certificate of Appealability

There are three criteria set forth in 28 U.S.C. § 1292(b) that must be met before the Court can properly certify an interlocutory order for appeal: (1) there must be a controlling question of law; (2) there must be a substantial ground for difference of

---

[26] *Id.* at 2.
[27] *Id.* at 2 n.4.
[28] *Id.* at 2.
[29] *Id.* at 1.
[30] R. Doc. 266.
[31] R. Doc. 266-1 at 1.
[32] *Id.* at 6.
[33] *Id.*

5

opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.[34] The moving party bears the burden of establishing that interlocutory appeal is appropriate.[35] It is within the Court's discretion to certify an order for interlocutory appeal under Section 1292(b).[36] The "'general congressional policy against piecemeal review' should preclude interlocutory review" in most instances.[37] To that end, interlocutory appeals are "exceptional" and should not be granted "'simply to determine the correctness' of a ruling."[38]

"Each application [of Section 1292(b)] is to be looked at . . . in the light of the underlying purpose reflected in the statute."[39] "'The manifest purpose of § 1292(b) is to support appeal from orders that cannot otherwise be reviewed by final judgment appeal or interlocutory appeal under some other provision of § 1292(b).'"[40] "It is self-evident that the purpose of § 1292(b) is not to undermine 28 U.S.C. § 1291's requirement of final judgment on the merits of a case before it may be appealed of right."[41]

As a preliminary matter, Movants overstate the breadth of the documents ordered to be produced. This Court did not order Movants to produce all tax returns and bank

---

[34] 28 U.S.C. § 1292(b); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981).
[35] *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 813 (E.D. La. 2009).
[36] *Waste Mgmt. of Louisiana, L.L.C. v. Parish*, No. CIV. A. 13-6764, 2014 WL 5393362, at *3 (E.D. La. Oct. 22, 2014) ("This Court has the discretion to certify its Order and Reasons for interlocutory appeal under 28 U.S.C. § 1292(b)."); *In re Chinese Manufactured Drywall Products Liab. Litig.*, No. 09-4115, 2012 WL 4928869, at *7 (E.D. La. Oct. 16, 2012) (same); *Copelco Capital, Inc. v. Gautreaux*, No. CIV. A. 99-850, 1999 WL 729248, at *1 (E.D. La. Sept. 16, 1999) ("The trial judge has substantial discretion in deciding whether or not to certify questions for interlocutory appeal."); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals.").
[37] *Commodity Futures Trading Commission v. Preferred Capital Inv. Co.*, 664 F.2d 1316, 1319 (5th Cir. 1982).
[38] *Gulf Coast Facilities Mgmt., LLC v. BG LNG Servs., LLC*, 730 F. Supp. 2d 552, 565 (E.D. La. 2010) (quoting *Clark–Dietz & Associates–Engineers, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 67–69 (5th Cir. 1983)).
[39] *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702 (5th Cir. 1961) (citations omitted).
[40] *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 425 (5th Cir. 2010) (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3929.1, at 400 (2d ed. 1996 & Supp. 2010)).
[41] *Id.*

statements. Instead, with respect to Gunther, Jr., the Court ordered the production of only his Forms 1040, with Schedule C, for years 2015 through 2018, with irrelevant information to be redacted.[42] Further, Gunther, Jr.'s personal bank statements are to be produced to the Court for in-camera review.[43]

Turning to the application of Section 1292(b), the Court finds Movants have failed to meet their burden of establishing that interlocutory appeal is appropriate under Section 1292(b). Movants argue the "controlling question of law" is:

> Should a defendant be required to produce confidential tax returns and bank statements based upon conclusory allegations in a compliant of piercing the corporate veil, for which a motion to dismiss is pending and which the trial court has not ruled upon? [44]

Movants' argument "amounts to a fact-specific dispute over the application of the discovery rules to this case."[45] "As several courts have recognized, pretrial discovery orders will seldom meet the requirements for interlocutory appeal."[46] This is not one of the "rare case[s] where the issue presented in the context of discovery . . . involves a controlling question of law."[47] Consequently, Movants have not shown Court's discovery order involved a controlling question of law.

---

[42] R. Doc. 262 at 2.
[43] *Id.*
[44] R. Doc. 277 at 2.
[45] *Fannie Mae v. Hurst*, 613 F. App'x 314, 318 (5th Cir. 2015).
[46] *Decena v. American Intern. Companies (AIG)*, No. 11-1574, 2012 WL 1640455, at *2 (E.D. La. May 9, 2012) (citing *Hyde Constr. Co. v. Koehring Co.*, 455 F.2d 337, 338–39 (5th Cir. 1972) (noting that it is a "rare case where the issue presented in the context of discovery . . . involves a controlling question of law and where an immediate appeal may materially advance the ultimate termination of the litigation"); *Union Pac. R.R. Co. v. ConAgra Poultry Co.*, 189 F. App'x 576, at *3 (8th Cir. 2006) ("Pretrial discovery orders are almost never immediately appealable ."); *White v. Nix*, 43 F.3d 374, 377–78 (8th Cir. 1994) (noting that "the discretionary resolution of discovery issues precludes the requisite controlling question of law" requirement)); *see also Dorato v. Smith*, 163 F. Supp. 3d 837, 880 (D.N.M. 2015) ("Discovery issues do not often involve controlling questions of law.").
[47] *Hyde Constr. Co.*, 455 F.2d at 338–39.

Further, Movants have failed to show how an immediate appeal may materially advance the ultimate termination of the litigation. Movants argue an immediate appeal will serve the interest of judicial economy.[48] However, courts have rarely held an immediate appeal of discovery orders will materially advance the ultimate termination of the case.[49] This is because—as is the case here—even if the Court's discovery order were to be reversed, "it would not terminate this litigation" because "the Court would still be required to resolve the merits of Plaintiff's claims, either at trial or through . . . dispositive pretrial motions."[50]

Finally, no underlying purpose of Section 1292(b) warrants certification. Movants appear to argue an interlocutory appeal is necessary to protect the "private" nature of the financial documents ordered to be produced because "once the confidential documents at issue are produced, the confidential nature will no longer exist and the 'cat will be out the bag.'"[51] Movants' argument for appellate review of this side issue is reminiscent of one addressed in I*n re Air Crash at Belle Harbor, New York on November 12, 2001.*[52] In that case, the Second Circuit considered whether it could exercise appellate jurisdiction over a non-party lawyer's appeal from a district court order directing him to produce documents and appear for a deposition, despite the lawyer's assertions of various privileges belonging to himself and his client.[53] The lawyer argued appellate jurisdiction could be exercised pursuant to the collateral order doctrine, which allows courts of appeal to hear an appeal from an interlocutory order "if such order (1) 'conclusively determined

---

[48] R. Doc. 266-1 at 9.
[49] *See, e.g., Fannie Mae*, 613 F. App'x at 318; *Hyde Constr. Co.*, 455 F.2d at 338–39; *Decena*, 2012 WL 1640455 at *2.
[50] *Decena*, 2012 WL 1640455 at *2.
[51] R. Doc. 266-1 at 9.
[52] 490 F.3d 99 (2d Cir. 2007).
[53] *Id.*

the disputed question'; (2) 'resolved an important question completely separate from the merits of the action'; and (3) 'was effectively unreviewable on appeal from a final judgment.'"[54] The Second Circuit held this argument was foreclosed by the court's prior holding in *Chase Manhattan Bank, N.A., v. Turner & Newall, PLC*,[55] where the Second Circuit "rejected application of the collateral order doctrine in an appeal from a discovery order that required disclosure of thousands of documents allegedly protected by attorney-client privilege."[56]

Other courts have confirmed the mere fact that relevant documents may contain personal or private information does not alone make an order to produce those documents appealable.[57] The Fifth Circuit's decision in *Ramsay v. Bailey* is one such example.[58] In that case, the Fifth Circuit, in ruling on an appeal of a district court's order dismissing a case for failure to comply with a discovery order and a long pattern of conduct amounting to want of prosecution, discussed the plaintiff's motion for interlocutory appeal of the district court's discovery order to produce the plaintiff's private diaries as relevant evidence of his mental state.[59] The Fifth Circuit noted this was clearly a "side issue" in the case and thus the Section 1292(b) motion was "virtually frivolous."[60] With respect to his appeal of the district court's order of dismissal, the plaintiff argued the district court's discovery order to produce his personal diaries violated his "constitutional right to privacy."[61] The Fifth Circuit found this argument

---

[54] *Id.* at 109 (quoting *SEC v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001) (quoting *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999))).
[55] 964 F.2d 159 (2d Cir. 1992).
[56] *In re Air Crash*, 490 F.3d 99, 109.
[57] *See, e.g., United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959) (holding an order to produce documents over a claim of privilege is not an appealable order within the meaning of Section 1292(b)).
[58] 531 F.2d 706 (5th Cir. 1976).
[59] *Id.*
[60] *Id.* at 708.
[61] *Id.* at 707.

9

uncompelling, particularly in light of the fact that the defendant had offered to "keep the contents of the diaries confidential except as to attorneys and parties in the lawsuit, would not permit copies of the diaries to be made, and would return the diaries to plaintiff at the conclusion of the litigation," but the plaintiff failed to "seek any type of protective order."[62]

Movants' proffered privacy concerns are similarly overstated in this case. The Court has appropriately protected the Movants' privacy interests in the following manners. First, the Court has limited the types of documents to be produced and allowed redaction of irrelevant information in those documents.[63] Second, the Court will conduct an in-camera review of certain documents before requiring their production.[64] Third, Movants' production will be subject to a protective order.[65] In light of these comprehensive protections, allowing immediate appeal of the Court's discovery order would thus only serve to hinder, not advance, the ultimate termination of the litigation.

Because there is no controlling question of law as to which immediate appeal from the Court's August 28, 2019 discovery order may materially advance ultimate termination of litigation, certification of the Court's discovery order for appeal pursuant to 28 U.S.C. § 1292(b) is not warranted. Movants' privacy concerns do not entitle Movants to an immediate appeal, and, moreover, the Court has implemented adequate safeguards to protect Movants.

---

[62] *Id.* at 708.
[63] R. Doc. 262.
[64] *Id.*
[65] *See* R. Docs. 273 and 274.

## II. Motion for Stay

"The decision whether to stay proceedings is discretionary, and the exercise of discretion is guided by the policies of justice and efficiency."[66] Movants request the Court stay its August 28, 2019 discovery order while it is considering Movants' request for certification. Because the Court has decided to deny Movants' request for certification, Movants' motion for a stay is accordingly denied as moot.

## CONCLUSION

**IT IS ORDERED** that Movants' motion is **DENIED.**

**New Orleans, Louisiana, this 13th day of September, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] *Benjamin v. Bayer Corp.*, 2002 WL 1009475, at *1 (E.D. La. May 16, 2002) (citing *Calvin Boudreaux v. Metropolitan Life Ins. Co.*, 1995 WL 83788, *1 (E.D. La. 1995)).