UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MACK ENERGY COMPANY,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 16-1696 |
| RED STICK ENERGY, LLC, ET AL.,<br>    Defendants | SECTION "E" (1) |

## ORDER AND REASONS

Before the Court is a Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim For Which Relief Can Be Granted, Or Alternatively Motion For Summary Judgment, As To Mack Energy Co.'s Fifth Amended And Superseding Complaint, filed by Defendant Albert Gunther, Jr.[1] Mack Energy Co. ("Mack") opposes this motion.[2] Gunther, Jr. filed a reply.[3,4] For the following reasons, Gunther, Jr.'s motion is **DENIED**.

## MOTION FOR SUMMARY JUDGMENT

Gunther, Jr. labels the instant motion as a motion to dismiss for failure to state a claim, or, alternatively, motion for summary judgment.[5] Thus, a threshold inquiry is whether Gunther, Jr.'s motion is properly treated as a motion to dismiss or a motion for summary judgment. The Court treats Main Pass's motion as a motion for summary judgment. "Rule 12(b) gives a district court complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule

---

[1] R. Doc. 199.
[2] R. Doc. 211. See also R. Doc. 229 (response to Gunther, Jr.'s statement of undisputed material facts).
[3] R. Doc. 234.
[4] Mack also filed a motion for leave to file a sur-reply. R. Doc. 237. Mack seeks to file a sur-reply attaching the affidavit of Timothy Ledet, a District Landman employed by Mack, who attests Thomas Burnett made representations to him regarding agreements between Burnett and his partner, Gunther, Jr. R. Doc. 237-3. In response, Gunther, Jr. filed a motion to strike the affidavit of Timothy Ledet. R. Doc. 239. Mack opposes this motion. R. Doc. 261. Because the affidavit of Timothy Ledet is not relevant to the Court's determination of this motion, the Court **DENIES AS MOOT** Mack's motion for leave to file a sur-reply, R. Doc. 237, and Gunther, Jr.'s motion to strike the affidavit of Timothy Ledet, R. Doc. 239.
[5] R. Doc. 199.

1

12(b)(6) motion."[6] "'When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it.'"[7] In this case, the parties have submitted materials beyond the pleadings that make it appropriate to consider the motion as a motion for summary judgment. Gunther, Jr. expressly seeks summary judgment in the alternative,[8] and Mack does not request additional discovery prior to the determination of Gunther, Jr.'s motion for summary judgment.[9]

## BACKGROUND[10]

This case arises out of the drilling of an oil and gas well in the Main Pass 21 Prospect (the "Prospect").[11] Houston Energy, L.P. ("Houston Energy") acquired the Prospect and approached Mack about acquiring an interest and acting as operator of the Prospect.[12] At the time, a 26.5% interest in the Prospect remained available for purchase.[13] Mack allegedly was unwilling to agree to act as operator "until the remaining 26.5% interest was purchased and Mack was satisfied that the purchasing party would have sufficient funds to pay their 26.5% share of the costs associated with the initial test well."[14] Houston Energy identified Thomas Burnett and Albert W. Gunther, Jr., as investment partners and interested buyers of the remaining interest in the prospect.[15] Burnett is a member of Red Stick and Gunther, Jr. is a member of Natrona Resources LLC ("Natrona").[16] "Houston

---

[6] *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).
[7] *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)).
[8] R. Doc. 199.
[9] *See* R. Doc. 211.
[10] This section is based on the allegations of Mack. R. Doc. 191.
[11] R. Doc. 191 at ¶ 4.
[12] *Id.* at ¶¶ 4, 7.
[13] *Id.* at ¶ 7.
[14] *Id.* at ¶ 8.
[15] *Id.* at ¶ 9.
[16] *Id.* at ¶ 1.

Energy had participated in a previous prospect with Burnett and Gunther, Jr., named the Barber's Hill Prospect."[17] According to Mack, "Houston Energy and/or Burnett represented to Mack that Burnett and Gunther, Jr. timely paid their share of costs associated with the Barber's Hill Prospect."[18] Further, "Houston Energy and/or Burnett informed Mack that Burnett and Gunther, Jr. had agreed to buy the outstanding 26.5% interest through an entity to be formed in the future by Gunther, Jr., and that future entity (eventually formed as Defendant, Main Pass), would be funded 90% by Gunther, Jr. and 10% by Burnett through his company, Red Stick."[19] Mack alleges that due to time constraints, Mack agreed to allow Red Stick to execute the [Participation Agreement ("PA")] and [Joint Operating Agreement ("JOA")] as buyer of the 26.5% interest with the understanding by Houston Energy and Mack that, pursuant to the agreement between Red Stick and Gunther, Jr., the 26.5% interest would be assigned to Main Pass, the formation of which had not yet been completed by Gunther, Jr."[20]

On December 16, 2015, "Gunther, Jr. formed Main Pass," and six days later, Burnett, as President of Red Stick, executed the PA and JOA.[21] Main Pass's members include Natrona and Red Stick.[22] Pursuant to the PA and JOA, Mack drilled the well, which turned out to be a dry hole.[23] The well ultimately was plugged and abandoned.[24] Mack paid the costs incurred for drilling, testing, plugging and abandoning the well, and issued joint interest billing statements to Red Stick for its respective share of the costs.[25]

---

[17] *Id.*
[18] *Id.* at ¶ 10.
[19] *Id.* at ¶ 13.
[20] *Id.* at ¶ 14.
[21] *Id.* at ¶ 30.
[22] *Id.* at ¶ 1.
[23] *Id.* at ¶ 22.
[24] *Id.*
[25] *Id.* at ¶ 24.

3

A portion of the joint interest billing statements representing Red Stick's 26.5% share of the costs incurred by Mack remains unpaid.[26] On December 8, 2016, Mack filed the instant lawsuit to recover the costs of drilling, testing, plugging, and abandoning the dry hole.

On June 18, 2019, Mack filed its fifth amended and superseding complaint, in which it brings a detrimental reliance claim against Gunther, Jr.[27] Mack alleges Gunther, Jr. entered into a partnership agreement with Red Stick whereby Gunther, Jr.:

   a. authorized Red Stick to execute the PA and JOA;

   b. agreed to form Main Pass;

   c. agreed to accept an assignment to Main Pass of Red Stick's 26.5% interest in the Main Pass 21 Prospect; and,

   d. agreed to fund through Main Pass 90% of the obligations to which Red Stick agreed in the PA and JOA.[28]

Mack alleges Gunther Jr. entered this partnership agreement "with the intent to not accept an assignment from Red Stick to Main Pass if the Subject Well proved to be a dry hole"; Mack "justifiably relied upon the representations of the identity and nature of the partnership agreement between Red Stick and Gunther, Jr. to its detriment by agreeing to act as operator with Red Stick, which had insufficient funds to bear 26.5%" of the well; and therefore Gunther, Jr. is liable to Mack for damages as a result of Mack's detrimental reliance.[29]

In the instant motion, Gunther, Jr. argues "Mack's detrimental reliance claim fails because Mack has not alleged any communication between Mack and Albert W. Gunther,

---

[26] *Id.* at ¶ 26.
[27] R. Doc. 191.
[28] *Id.* at ¶ 38.
[29] *Id.* at ¶¶ 39-37. The paragraph following ¶ 40 is numbered ¶ 37.

4

Jr. upon which Mack relied to its detriment. Instead, Mack clearly states that it relied upon representations of 'Houston Energy and/or (Thomas) Burnett.'"[30] Mack responds: "Gunther, Jr.'s motion should be denied because Gunther, Jr. was bound by the representations made by his partner, Thomas Burnett. It is immaterial to Mack's claim for detrimental reliance that Mack and Gunther, Jr. did not have direct communications."[31]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] "An issue is material if its resolution could affect the outcome of the action."[33] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[34] All reasonable inferences are drawn in favor of the nonmoving party.[35] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[36]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[37] If the

---

[30] R. Doc. 199-1 at 4.
[31] R. Doc. 211 at 1.
[32] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[33] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[34] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[35] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[36] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[37] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[38]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[39] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[40] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving

---

[38] *Celotex*, 477 U.S. at 322–24.
[39] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[40] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

party."[41] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[42] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[43] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[44]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[45]

## **LAW AND ANALYSIS**

To be entitled to summary judgment, a movant must first "identif[y] undisputed material facts that would entitle it to judgment as a matter of law."[46] Only once the movant

---

[41] *Celotex*, 477 U.S. at 332–33.
[42] *Id.*
[43] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[44] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[45] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[46] *See, e.g., Western Alliance Ins. Co. v. Northern Ins. Co. of New York*, 176 F.3d 825, 827 (5th Cir. 1999). *See also Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir. 1994) ("When seeking summary judgment, the movant bears the *initial responsibility* of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." (emphasis added) (citation omitted)).

identifies undisputed material facts entitling it to judgment as a matter of law does the burden shift to the non-movant to show a genuine issue of material fact exists that precludes summary judgment.[47]

In Gunther, Jr.'s statement of undisputed material facts, Gunther, Jr. states it is undisputed that "Mack has never communicated with Defendant, Albert W. Gunther, Jr."[48] Gunther, Jr. argues, "Mack's detrimental reliance claim fails because Mack has not alleged any communication between Mack and Albert W. Gunther, Jr. upon which Mack relied to its detriment."[49] In response to Gunther, Jr.'s statement of undisputed material facts, Mack admits it never communicated with Gunther, Jr. but argues Gunther, Jr. is bound by the communications of his partner, Thomas Burnett.[50]

Gunther, Jr. does not state it is an undisputed material facts that Burnett was not his agent, partner, or representative.[51] The closest Gunther, Jr. comes to discussing the materiality of whether Burnett's representations may be attributed to him is when he argues: "The Fifth Amended and Superseding Complaint is devoid of any allegations that 'Houston Energy and/or (Thomas) Burnett' were the agents of Defendants or authorized to speak on behalf of the Defendants."[52] This statement is factually inaccurate, as Mack alleged:

> Gunther, Jr. entered into a partnership agreement with Red Stick whereby Gunther, Jr.:
>
>   a. authorized Red Stick to execute the PA and JOA;
>
>   b. agreed to form Main Pass;

---

[47] *See, e.g., Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).
[48] R. Doc. 199-2 at ¶ 2.
[49] R. Doc. 199-1 at 4.
[50] R. Doc. 229 at ¶ 2.
[51] *See* R. Doc 199-2.
[52] R. Doc. 199-1 at 4.

    c. agreed to accept an assignment to Main Pass of Red Stick's 26.5% interest in the Main Pass 21 Prospect; and

    d. agreed to fund through Main Pass 90% of the obligations to which Red Stick agreed in the PA and JOA.[53]

The undisputed fact that Gunther, Jr. never communicated directly with Mack does not entitle Gunther, Jr. to judgment as a matter of law on the detrimental reliance claim. Gunther, Jr. cites no authority, and the Court is aware of none, supporting the position that a principal cannot be held liable for the representations made by his agent, or a partner held liable for the representations made by his partner, under a theory of detrimental reliance. Accordingly, whether Burnett had actual or apparent authority to speak on behalf of Gunther, Jr. is a material fact that remains in dispute.

## CONCLUSION

**IT IS ORDERED** that Gunther, Jr.'s motion for summary judgment is **DENIED.**

**New Orleans, Louisiana, this 23rd day of September, 2019.**

                                            **SUSIE MORGAN**
                                **UNITED STATES DISTRICT JUDGE**

---

[53] R. Doc. 191 at 11, ¶ 38.