UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MACK ENERGY CO. | * | CIVIL ACTION NO. 16-1696 |
| | * | |
| | * | SECTION: "E"(1) |
| VERSUS | * | |
| | * | JUDGE SUSIE MORGAN |
| | * | |
| RED STICK ENERGY, L.L.C., ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| *********************************** | * | |

ORDER AND REASONS

Before the Court are the Motion to Compel Discovery Responses from Mack Energy Company ("Mack") (Rec. Doc. 220) and the Motion to Compel Discovery Responses from Red Stick Energy, L.L.C. ("Red Stick") (Rec. Doc. 219), both filed by Main Pass 21, L.L.C. ("Main Pass 21"), Albert W. Gunther, Jr. ("Gunther Jr."), Natrona Resources, L.L.C. ("Natrona"), Dixie Management Services, L.L.C. ("Dixie"), The RE Trust ("RE Trust"), Old South Mechanical, L.L.C. ("OSM"), Old South Ventures, L.L.C. ("OSV"), and Albert W. Gunther, III ("Gunther III" and with Main Pass 21, Gunther Jr., Natrona, Dixie, RE Trust, OSM, and OSV (the "Gunther Parties"). The motions have been submitted on the briefs. For the following reasons, the motions are GRANTED in part and DENIED in part.

Background

This lawsuit arises out of a contract to acquire and develop an exploratory drilling prospect off the coast of Plaquemines Parish ("Main Pass 21 Prospect"). Houston Energy, L.P. ("Houston Energy") acquired seismic data covering the Main Pass 21 Prospect, acquired a lease covering the lands in the Main Pass 21 Prospect, and contacted various parties to participate in the prospect. Mack says it was recruited to participate as the operator under a participation agreement ("PA") and a joint operating agreement ("JOA"). Under the PA, all of the parties agreed to bear their

1

proportionate share of the cost to acquire the lease and the seismic data, to develop the prospect, and to drill the initial test well. As operator, Mack was responsible to drill the initial well, including paying the costs thereof which it would invoice to the parties in their proportionate share. Mack claims that when it was first approached by Houston Energy, there was still a 26.5% interest available. Mack claims it was unwilling to agree to act as operator until that remaining interest was purchased and it was satisfied that the purchaser would have sufficient funds to pay their share of the costs. Mack says that Houston Energy represented that Thomas Burnett and Gunther Jr. where interested buyers, had previously participated with Houston Energy in a prospect named Barber's Hill, and that they had timely paid their share of their costs for the Barber's Hill Prospect.

Mack says that Houston Energy informed it that Burnett and Gunther Jr. had agreed to buy the 26.5% interest through an entity to be formed in the future and that the entity would be funded 90% by Gunther Jr. and 10% by Burnett through his company Red Stick.[1] Due to time constraints and deadlines, Mack says it agreed to allow Red Stick to execute the PA and JOA as buyer of the full 26.5% interest with the understanding that pursuant to an agreement between Red Stick and Gunther Jr., the 26.5% interest would be assigned to Main Pass 21, LLC ("Main Pass"), the new entity that had not yet been formed. Mack says that attached to the executed PA is an Authority for Expenditures ("AFE") estimating the cost of a completed initial test well to be $4,924,795. According to Mack, by executing the PA, Red Stick agreed to pay $109,285.25 to Houston Energy, an initial payment of $830,602.75 to Mack, and 26.5% of any additional costs incurred to drill and test the initial well and either completing it for production or plugging and abandoning it if it was a dry hole.

---

[1] Mack also cites a December 3, 2015, email chain between Burnett and some of Gunther Jr.'s agents to support its assertion that Gunther Jr. and Burnett agreed to acquire the 26.5% interest in the Main Pass 21 Prospect through a new limited liability company.

2

Mack proceeded to drill a test well, which was plugged and abandoned as a dry hole. Mack says the actual cost was less than estimated. It says it invoiced Red Stick for its share of the costs because the assignment from Red Stick to Main Pass had not yet been completed. Mack says a portion of Red Stick's shares of the costs have been paid late and a portion have not been paid at all. Mack sent a written demand to Red Stick on June 20, 2016. Red Stick paid $31,699.93, which corresponds with 10% of Red Stick's share of costs. Mack says that it was informed by Burnett that pursuant to the agreement between him and Gunther Jr., Red Stick is only responsible for 10% because Red Stick would assign its interest to Main Pass and Gunther Jr. is responsible for funding 90% of Main Pass.

Mack says that it believes Main Pass was formed on December 16, 2015, before the PA and JOA were executed. Mack says that Main Pass paid it $830,602.75, on December 23, 2015, and that Main Pass paid Houston Energy $109,285.52 on January 4, 2016, all pursuant to the PA. Mack asserts on information and belief that the two payments were made from Gunther Jr.'s personal funds "using Main Pass as a shell to shield Gunther, Jr., from liability under the PA and JOA."

Mack filed this lawsuit in the Western District of Louisiana on December 8, 2016 against Red Stick, Burnett, and Main Pass, seeking to compel arbitration of the payment dispute. After four prior amendments (resulting in the joinder of Dixie, Natrona, OSM, OSV, Gunther III, and RE Trust, each alleged to be a member of Main Pass or a member of their members), Mack's Fifth Superseding and Amended Complaint, filed on June 18, 2019, now names only Red Stick, Main Pass, and Gunther Jr. as defendants. Mack asserts a claim for breach of the PA and JOA against Red Stick, it asserts a claim for detrimental reliance against Gunther Jr. and it claims that "Main Pass assumed the obligations of Red Stick under the PA and JOA."

Red Stick has asserted a Third-Party Complaint against the Gunther Parties, alleging that they have breached their agreement to accept assignment of 90% of the ownership interest in Main Pass and to be responsible for 90% of the drilling costs related to the project. Alternatively, they assert a claim for detrimental reliance. Red Stick also asserts that Gunther Jr. and the Gunther Entities improperly used the Gunther Entities and Main Pass to perpetrate a fraud on Red Stick and that the Gunther Entities are so unified with each other that their misuse of the corporate form requires that the corporate form should be disregarded. Red Stick alleges that the Gunther Entities have common ownership and management and that they comingle property and assets.

On June 4, 2019, Gunther Jr. named Houston Energy as a third-party defendant, alleging that Houston Energy was not authorized to make any representations on behalf of Gunther Jr. personally. Houston Energy filed its Answer on July 8, 2019.

Meanwhile, on October 16, 2018, Mack entered into a settlement agreement with Red Stick, Burnett and Janet Burnett pursuant to which Red Stick and the Burnetts have (1) assigned to Mack their rights against the Gunther Parties, (2) paid Mack $25,000, and (3) agreed not to contest a future motion for summary judgment filed by Mack against Red Stick, and Mack has agreed (1) to release all claims against the Burnetts, (2) not to execute any judgment against Red Stick and the Burnetts, and (3) to pay the attorneys' fees of Red Stick and Burnett in this litigation.

The Gunther Parties filed a motion for summary judgment arguing that the settlement agreement created a right of litigious redemption[2] under Louisiana law such that the Gunther Parties could extinguish their debt to Red Stick by paying to Mack the attorneys' fees and costs incurred by Mack for its representation of Red Stick and Burnett from the date of the assignment

---

[2] Louisiana Civil Code article 2652 provides that "[w]hen a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of assignment."

(October 16, 2018) to the date of demand for litigious redemption (November 12, 2018). The district court agreed that Red Stick and Burnett had assigned "litigious rights" and found that the Gunther Parties were prompt in making known their intent to exercise the right of litigious redemption. (Rec. Doc. 137). However, the court denied the motion for summary judgment, rejecting the Gunther Parties' argument that the price Mack paid for the litigious rights was attorneys' fees and costs. Instead, the court found that the price the Gunther Parties owe to redeem the litigious rights is the amount of the debt of Red Stick and the Burnetts that was discharged by the assignment. Id.

After this ruling, on May 1, 2019, the district court ruled on Mack's pending motion for partial summary judgment pursuant to which Mack sought a ruling that Red Stick was liable to it in the amount of $285,277.62 in principal, $47,622.85 in interest, $50,766.25 in attorneys' fees, and $763.17 in costs. The Gunther Parties opposed Mack's motion on the grounds that Red Stick's debt to Mack had been extinguished through remission when Mack, Red Stick, and the Burnetts entered into the settlement agreement. The district court denied the motion for partial summary judgment, finding that the settlement agreement was ambiguous as to whether Mack intended to remit the debt owed to it by Red Stick. (Rec. Doc. 162). Among other things, the Gunther Parties argued that when Mack referred to the debt as "extinguished" in its response to their motion for litigious redemption, Mack had judicially admitted the remission of the debt. The district court rejected this interpretation, and concluded that it would not treat the statement in Mack's brief as a judicial admission of the extinguishment of the debt. Id.

A little over a month later, on June 11, 2019, Mack and Red Stick executed an addendum to their litigation agreement and submitted it to the court. The addendum provides that "it is the

Parties' intent that the debt owed to Mack Energy Co. has not been and shall not be remitted . . . ." (Rec. Doc. 252-3, at 2).

Discovery

The present discovery dispute concerns two issues. The first is whether Red Stick will be required to supplement its responses to the Gunther Parties' discovery requests concerning Red Stick's evidence in support of its alter ego and corporate veil piercing claims. Red Stick objected that the requests sought documents in the Gunther Parties' possession and added that responsive documents had been produced. The Gunther Parties complain that Red Stick has failed to identify any documents to support its claims. They demand that Red Stick confirm or deny the existence of any evidence to support piercing the corporate the veil. They say that responsive documents must be identified by bates stamp. Following the filing of the motion to compel, Red Stick amended its response to the Gunther Parties' discovery requests: 1) to object that the request is unduly burdensome because the documents are in the Gunther Parties' possession, 2) to respond that the only documents in its possession to support its claims have already been produced along with a reference to "emails between representatives of Red Stick and representatives of Defendants", and 3) to note that additional documents are in Gunther's possession and subject to outstanding discovery. Red Stick reports that the "emails" it refers to amount to only 20 pages. In reply, the Gunther Parties argue that Red Stick's revised responses remain insufficient. They say Red Stick has failed to produce any documents showing evidence of comingled funds, misuse of the corporate form, failure to observe corporate formalities, failure to properly approve management decisions, improper handling of company funds, inadequate capitalization, or use of the entities for personal purposes. The emails do not contain any information regarding these issues. The Gunther Parties say that Red Stick has no evidence to support its claims and is on a

fishing expedition. Instead, they argue, Red Stick should be required to admit that it possesses no responsive documents.

Of note, the "outstanding discovery" referred to by Red Stick in its supplemental response was addressed by the undersigned in resolving a motion to compel filed by Mack in June 2019. On July 26, 2019, the undersigned ruled that Mack would be allowed to conduct discovery into the alter ego and corporate veil piercing claims asserted by Red Stick against the Gunther Parties, finding that the allegations and evidence available at this time were sufficient to justify proceeding with such discovery. (Rec. Doc. 225). The Gunther Parties appealed that decision to the district court, arguing that it should not be required to provide information or documents regarding their bank statements, tax returns, formation documents, loans or transfers among them (except for Main Pass), or consideration paid for an ownership interest in each of the Gunther Parties. Following the filing of the reply, the district court ruled on the Gunther Parties' appeal of the undersigned's discovery ruling during a status conference on August 28, 2019. (Rec. Doc. 262). The district court affirmed in part and reversed in part. The court ordered production of Gunther Jr.'s federal tax Form 1040 with Schedule C for 2015 through 2018 and ordered *in camera* review of Gunther Jr.'s personal bank statements. Gunther Jr. was also required to provide the court with a list of bank account numbers for himself and the other entities named in the action. Production was due September 18, 2019.

The second discovery issue before the court at this time is whether Mack and Red Stick will be required to produce correspondence regarding the negotiation of their settlement agreement and drafts of the settlement agreement. The Gunther Parties argue that this information is relevant to determine Mack and Red Stick's intent. They point out that the district court has already held the settlement agreement ambiguous as to whether the parties intended to extinguish Red Stick's

debt to Mack. Mack and Red Stick both respond that any ambiguity in the settlement agreement has been rectified by the June 2019 Addendum, which they say clarifies that they did not intend to extinguish the debt. Additionally, they both assert that the communications are protected by the common interest privilege. In reply, the Gunther Parties argue that if Mack and Red Stick extinguished the debt when they entered the settlement agreement, the debt cannot be revived by virtue of the addendum. Thus, they insist that determination of their intent at the time of the settlement agreement remains important and the correspondence and drafts are relevant to that issue. As to the assertion of the common interest privilege, the Gunther Parties insist that they do not seek correspondence between counsel and their clients. They also argue that at the time Mack and Red Stick were negotiating the settlement agreement, they were not aligned and so they cannot rely on the common interest privilege.

## Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that

8

discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee's note to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

2. *Common Interest Privilege*

Where state law provides the rule of decision, state law governs privilege. Fed. R. Evid. 501; In re Avantel, S.A., 343 F.3d 311, 323 (5th Cir. 2003). The parties here appear to agree that either Louisiana or Texas law applies to the issues raised in this case. Louisiana's Rules of Evidence establish a privilege against disclosure of:

> a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is . . . [b]y the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.

La. Code Evid. art. 506(B)(3). Similarly, the Texas Rules of Evidence protect from disclosure:

> confidential communications made to facilitate the rendition of professional legal services to the client . . . by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action;

Tex. R. Evid. 503(b)(1)(C). Under Texas law, a pending legal action is required. Id. Under both state's laws, the communication must have been made for the rendition of professional legal services. Neither state protects communications made between clients. See Vintage Assets, Inc. v.

Tennessee Gas Pipeline Co., L.L.C., No. CV 16-0713, 2017 WL 2812967, at *3 (E.D. La. June 29, 2017) (refusing to extend the attorney-client privilege to communications made between representative of one client and a representative of another client (not the other client's lawyer), even where the latter's counsel was copied on the communication."); In re XL Specialty Ins. Co., 373 S.W.3d 46, 52 (Tex. 2012) ("The allied litigant doctrine protects communications made between a client, or the client's lawyer, to another party's lawyer, not to the other party itself.").

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001). When documents are withheld as privileged or protected as trial-preparation materials, Federal Rule of Civil Procedure 26(b)(4)(A) requires that the party invoking the privilege "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Thus, Courts typically require a privilege log that identifies "each document and provide basic information, including the author, recipient, date and general nature of the document." Benson v. Rosenthal, No. CV 15-782, 2016 WL 1046126, at *9 (E.D. La. Mar. 16, 2016) (quoting In re Papst Licensing, GmbH Patent Litig., No. Civ. A. MDL 1298, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001).

3. *Request for Alter Ego and Veil Piercing Documents*

The court finds that Red Stick's responses to the discovery requests concerning its alter ego and corporate veil piercing claims are sufficient at this time. Red Stick has identified 20 pages of documents. Although bates numbers were not provided, this is not the kind of volume of documents that requires bates number identification for the recipient to know what documents are being referenced. Red Stick's response makes clear that it has no other responsive documents in

its possession. The Gunther Parties are in the process of responding to or have now responded to the un-objected to portions of the undersigned's discovery order and the district court's recent ruling regarding production of tax documents and bank statements. Following the completion of the Gunther Parties' production and the District Court's ruling following *in camera* review of the Gunther Jr. bank statements, Red Stick will be required to supplement its responses within 21 days to indicate whether it has obtained additional documents in support of its claims or whether it still relies only on the 20 pages of emails previously produced. If additional documents have been obtained, Red Stick shall identify the documents by bates number.

4. *Requests for Documents Concerning Negotiation of the Settlement Agreement*

The specific discovery sought by the Gunther Parties is an identification of all agreements between Mack, Red Stick, and the Burnetts, after the lawsuit was initiated and a production of same (Interrogatory No. 14 and Request for Production 11); production of correspondence regarding the original settlement agreement (Request for Production 7); and production of correspondence regarding any settlement agreements entered into after the October 2018 Settlement Agreement, including the addendum (Request for Production No. 8). The latter two categories are not explicitly limited by time period, but presumably their subject matter limitation would result in a narrow time period.

The first issue to tackle with regard to the Gunther Parties' request for correspondence related to the Settlement Agreement and addendum and drafts of the Settlement Agreement is the relevance of this information. It is clear that the district judge identified "a factual dispute regarding whether Mack intended to remit the debt by entering into the [Settlement] Agreement with Red Stick and Thomas Burnett . . . ." (Rec. doc. 162, at 8). The district court concluded that the terms of the settlement agreement were ambiguous on this point because of conflicting provisions. As a

result of this finding, parol evidence of the parties' intent may be admissible under Louisiana and Texas law. See Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co., 76 F.3d 89, 91 (5th Cir. 1996); Diefenthal v. Longue Vue Mgmt. Corp., 561 So. 2d 44, 51 (La. 1990). Although Red Stick and Mack say their addendum resolves any ambiguities, they have not presented any case law to support their interpretation that a contract entered into after a court ruling highlighting an ambiguity can be conclusive evidence of the parties' intent at the time of the original agreement. Here, the Gunther Parties argue that if the debt was extinguished at the time of the original settlement agreement, then the addendum cannot revive the debt. They insist that Mack and Red Stick cannot use a subsequent agreement to alter the parties' intent at the time they entered into the settlement agreement. The court agrees that the intent of Mack, Red Stick, and the Burnetts at the time they entered into the settlement agreement remains relevant to the determination of whether that agreement remitted Red Stick's debt. Thus, drafts of the October 2018 Settlement Agreement and communications regarding the parties' intent to remit the debt at the time they were negotiating the agreement are relevant to the claims and defenses in this action. However, the discovery requests as written are overbroad and exceed the scope of permissible discovery.

Interrogatory 14 and related Request for Production 11 seek identification and production of all draft agreements, amended agreements, verbal agreements, or cancelled agreements between Mack and Red Stick after the lawsuit was initiated on December 6, 2016. The only agreement at issue is the October 2018 Settlement Agreement, and the only ambiguity at issue is whether the parties intended to remit the debt owed by Red Stick to Mack. Other than drafts of the October 2018 Settlement Agreement and the June 2019 Addendum, it is not clear what other agreements or drafts or cancelled agreements the Gunther Parties believe may exist and, if they do, how they might be relevant to the intent of Red Stick and Mack when they entered the October 2018

12

Settlement Agreement. Thus, Interrogatory 14 and Request for Production 11 will be limited to drafts of the October 2018 Settlement Agreement, and agreements and draft agreements proposing to amend, supplement, or clarify the October 2018 Settlement Agreement, including the June 2019 Addendum. The court notes that although the Addendum has not been held ambiguous, drafts of the Addendum or any other supplements or amendments to the October 2018 Settlement Agreement may shed light on the parties' intent with regard to the October 2018 Settlement Agreement.

The Gunther Parties also seek communications between Mack, Red Stick, and the Burnetts concerning the October 2018 Settlement Agreement (Request 7). Because only the parties' intent to remit the debt is an open fact issue, only communications concerning the October 2018 Settlement Agreement that specifically concern Red Stick's debt are relevant. Thus, this request shall be limited to communications concerning Red Stick's debt. The Gunther Parties further seek communications between Mack, Red Stick, and the Burnetts concerning "any proposed settlement agreements entered into after October 16, 2018," including the Addendum (Request 8). This request shall be limited to communications regarding any amendments or addenda to the October 16, 2018 Settlement Agreement, including the June 2019 Addendum, to the extent such communications concern Red Stick's debt.

As to the communications,[3] the second issue to tackle is whether they are protected by the common interest privilege as Red Stick and Mack insist. Importantly, there is no indication that

---

[3] Mack and Red Stick do not appear to take the position that the draft agreements are protected by the common-interest privilege. Indeed, draft agreements standing alone are not communications capable of being protected by the attorney-client privilege. However, it is possible that draft agreements amount to confidential attorney-client communications. See Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., No. CIV.A. 09-6644, 2014 WL 3385130, at *4 (E.D. La. July 10, 2014) (holding that redacted draft affidavits were protected by the attorney client privilege); United States v. N.Y. Metro. Transp. Auth., No. 03CV02139-SLT-MDG, 2006 WL 3833120, at *2 (E.D.N.Y. Dec. 29, 2006) (holding that draft uniform policy bulletins "need not be produced since they are draft documents that were submitted to attorneys for the purpose of obtaining legal advice").

Mack and Red Stick have produced a privilege log identifying each allegedly privileged communication. The fact that the parties share a common interest in pending litigation does not cloak all of their communications with a privilege. Under the plain language of both the Texas and Louisiana rules of evidence, only communications between a client or its lawyer (or their representatives) to the other party's lawyer are covered. La. Code Evid. art. 506(B)(3); Tex. R. Evid. 503(b)(1)(C). Additionally, the communications are only protected if they were made for the purpose of facilitating the rendition of professional legal services. La. Code Evid. art. 506(B)(3); Tex. R. Evid. 503(b)(1)(C). Texas law specifically requires that a protected communication must concern a matter of common interest in a *pending action*. Tex. R. Evid. 503(b)(1)(C). While some of the communications concerning the negotiation of the settlement agreement would likely meet these requirements, it is unclear that every single communication would. Moreover, while Red Stick and Mack aligned themselves against the Gunther Parties with the settlement agreement, as the Gunther Parties point out, Red Stick and Mack were also adverse to each other at the time they engaged in the negotiation. A careful review of each communication to determine whether it was made to the other party's attorney for the purpose of facilitating legal advice and concerning a matter of common interest must be performed. Communications in which the parties are negotiating issues on which they are adverse would be unlikely to be protected by the common-interest privilege. Communications that are not in furtherance of legal advice or which are between the clients and not the attorneys are not privileged.

Accordingly, Mack and Red Stick shall respond to the Gunther Parties' discovery requests as limited by the court above. As to each responsive document over which they allege a common interest privilege, they shall list the document on a privilege log. The privilege log should be sufficiently detailed so that the Gunther Parties can contest the claim of privilege if appropriate.

If, under the circumstances, a privilege log would be overly burdensome, Mack can request relief from the Court.

## Conclusion

For the foregoing reasons, the Gunther Parties' Motions to Compel are GRANTED in part and DENIED in part. Within 21 days of receiving both the District Court's ruling following its *in camera* review of the Gunther, Jr., bank statements and the Gunther Parties' completion of their responses to the other pending discovery, Red Stick shall revise its discovery responses to refer to any additional responsive documents by bates number or to make clear that it has no other responsive documents in its possession besides the emails it has already referred to.

Regarding communications and draft agreements surrounding Mack and Red Stick's settlement, production shall be limited to (a) drafts of the October 2018 Settlement Agreement; (b) Communications regarding the October 2018 Settlement Agreement that concern Red Stick's debt to Mack, and (c) agreements and draft agreement proposing to amend, supplement, or clarify the October 2018 Settlement Agreement, including the June 2019 Addendum. As to any communications responsive to (a)-(c) above and over which a common interest or other privilege is asserted, Mack and Red Stick must prepare a privilege log, sufficiently detailed so that the Gunther Parties can contest the claims of privilege if appropriate. The production and privilege log are to occur within 30 days of this order. Should such a privilege log prove overly burdensome under the circumstances, Mack may request relief from the Court.

New Orleans, Louisiana, this 26th day of September, 2019.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge