UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| MACK ENERGY COMPANY, | CIVIL ACTION |
| --- | --- |
|     Plaintiff | |
| VERSUS | NO. 16-1696 |
| RED STICK ENERGY, LLC, ET AL., | SECTION "E" (1) |
|     Defendants | |

## ORDER AND REASONS

Before the Court is a Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim For Which Relief Can Be Granted, Or Alternatively Motion For Summary Judgment, As To Red Stick Energy, L.L.C.'S Amended Cross-Claim And Second Amended Third-Party Complaint, filed by Cross-Claim Defendants, Main Pass 21, L.L.C and Albert W. Gunther, Jr.; and Third-Party Defendants, Dixie Management Services, L.L.C., Natrona Resources, L.L.C., Old South Mechanical, L.L.C., Old South Ventures, L.L.C., Albert W. Gunther, III, Albert W. Gunther, Jr., as trustee of The RE Trust, and Martha Gunther, as trustee of The RE Trust (collectively, "Movants").[1] Movants seek an order dismissing Red Stick's crossclaims and third party claims against Movants.[2] Red Stick Energy, LLC ("Red Stick") opposes this motion.[3] Movants filed a reply.[4] For the following reasons, Movants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## MOTION TO DISMISS

Movants style the instant motion as a motion to dismiss for failure to state a claim, or, alternatively, motion for summary judgment.[5] A threshold inquiry thus is whether

---

[1] R. Doc. 181.
[2] R. Doc. 169; R. Doc. 170.
[3] R. Docs. 209 and 249.
[4] R. Doc. 224.
[5] R. Doc. 181.

1

Movants' motion is properly treated as a motion to dismiss or a motion for summary judgment. The Court construes Movant's motion as a motion to dismiss, for the following reasons. First, although Movants attached the October 2018 Confidential Covenant Not to Execute, Indemnity, and Assignment Agreement[6] and Assignment of Claims[7] to their motion to dismiss, the Court need not consider these materials in deciding the motion to dismiss because, as discussed below, these agreements have been nullified. Federal Rule of Civil Procedure 12(d) provides attachments not considered do not convert a motion to dismiss to a motion for summary judgment. Similarly, Red Stick attached the December 3, 2015 email exchange between Burnett and Jill Czapla to its response to Movants' motion to dismiss.[8] The Plaintiff, Mack, referenced and incorporated this email exchange into its complaint.[9] "When considering a motion to dismiss, courts may rely upon documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[10] As a result, Red Stick's submission of the email exchange with its opposition does not convert the instant motion to a motion for summary judgment.

Second, Movants' motion focuses on the sufficiency of the allegations made in Red Stick's amended crossclaim and second amended third party complaint,[11] which is the essence of a motion to dismiss for failure to state a claim.[12] Third, "[s]ummary judgment

---

[6] R. Doc. 181-3.
[7] R. Doc. 181-4.
[8] R. Doc. 249-1.
[9] R. Doc. 191 at ¶ 11; R. Doc. 191-1.
[10] *Thomas v. Lowe's Home Centers, Inc.*, Civil Action No. 13–0779, 2014 WL 545862, at *2 n.5 (W.D. La. Feb. 10, 2014) (internal quotations marks and citation omitted).
[11] *See* R. Doc. 181-1 at 16-17 (arguing Red Stick has "failed to allege the elements of a breach of contract claim").
[12] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

should not . . . ordinarily be granted before discovery has been completed."[13] This is because litigants should generally first be allowed an opportunity to obtain "the proof necessary to ward off summary judgment."[14] Discovery has not been completed in this matter, and accordingly ruling on a motion for summary judgment at this point would be premature.[15]

## BACKGROUND

This case arises out of the unsuccessful drilling of an oil and gas well in the Main Pass 21 Prospect.[16] Mack Energy Co. ("Mack") seeks to recover the costs of drilling, testing, plugging, and abandoning the dry hole.[17] Mack alleges Red Stick purchased a 26.5% interest in the Main Pass 21 Prospect and entered into a participation agreement ("PA") and a joint operating agreement ("JOA") with Mack.[18] According to Mack, Red Stick executed the agreements with the understanding that an entity to be formed in the future, Main Pass 21, L.L.C. ("Main Pass"), would be formed with Natrona Resources, L.L.C. ("Natrona") and Red Stick as its members, and Red Stick would then assign its interest in the Prospect to that entity.[19] Mack "paid the costs incurred in drilling, testing, plugging and abandoning the Subject Well," and, "because Burnett and Gunther, Jr. had not yet completed the anticipated assignment of Red Stick's interest to Main Pass, Mack issued joint interest billing statements to Red Stick for its respective share of said costs."[20] A portion of the joint interest billing statements sent to Red Stick remains unpaid.[21]

---

[13] *Alabama Farm Bureau Mut. Casualty Co. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 77 (1980) (citations omitted).
[14] *See Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980).
[15] This action was filed in 2016, but discovery only recently commenced.
[16] R. Doc. 191 at ¶ 4.
[17] *Id.* at ¶¶ 37, 38.
[18] *Id.* at ¶¶ 20.
[19] R .Doc. 191 at ¶¶ 13-14.
[20] *Id.* at ¶ 24.
[21] *Id.* at ¶ 26.

On September 21, 2018, Thomas Burnett and Red Stick filed a crossclaim against Main Pass, Dixie Management Services, L.L.C. ("Dixie"), and Albert W. Gunther, Jr.[22] On May 20, 2019, Red Stick filed an amended cross-claim against Gunther, Jr. and Main Pass, seeking a court order that "Main Pass and Albert W. Gunther, Jr. must reimburse Red Stick for any amounts awarded against Red Stick in favor of Mack for the Main Pass Prospect."[23]

On September 28, 2018, Burnett and Red Stick filed a third party complaint against Natrona, RE Trust, Old South Mechanical, L.L.C. ("OSM"), Old South Ventures, L.L.C. ("OSV"), and Albert W. Gunther, III.[24] On April 23, 2019, Burnett and Red Stick filed an amended third party complaint against Natrona, RE Trust, Old South Mechanical, L.L.C., and Albert W. Gunther, III.[25] On May 20, 2019, Red Stick filed a second amended third party complaint against Natrona, Dixie, Gunther, Jr. and Martha Gunther as trustees of RE Trust, OSM, OSV, and Gunther, III, seeking reimbursement for any award against Red Stick in favor of Mack.[26]

Red Stick alleges that, prior to Red Stick's execution of the PA and JOA with Mack, Red Stick, Gunther, Jr., Natrona, Dixie, and/or Main Pass all orally agreed that Red Stick would assign its interest in the Main Pass 21 Prospect to Main Pass such that "Natrona, Albert W. Gunther, Jr. and/or its members [would be] responsible for 90% of the costs claimed by Mack."[27] Main Pass's members are Natrona, which holds 90% of Defendant Main Pass's membership interest, and Red Stick (which holds 10% of Defendant Main

---

[22] R. Doc. 63.
[23] R. Doc. 169 at ¶ 11.
[24] R. Doc. 65.
[25] R. Doc. 157.
[26] R. Doc. 170.
[27] R. Doc. 169 at ¶¶ 5, 8; R. Doc. 170 at ¶¶ 5, 8.

4

Pass's membership interest.[28] According to Red Stick, "[s]ubsequent to the determination that the well was a dry hole, Defendant Albert W. Gunther, Jr. individually and/or as manager of Natrona and Dixie Management Services, L.L.C., and in turn, Defendant Main Pass, declined to pay any of the remaining drilling costs for the Main Pass 21 Prospect."[29]

Red Stick brings identical causes of action against the cross claim and third party defendants. Red Stick labels these causes of action: (1) breach of contract, (2) detrimental reliance, and (3) veil piercing.[30] With respect to its breach of contract and detrimental reliance claims, Red Stick alleges Movants:

> [A]greed that Red Stick would assign all of its interest in the Main Pass 21 Prospect to Defendant Main Pass in order to shift all of the drilling costs and benefits attributable to Red Stick to Defendant Main Pass and its members such that Natrona, as a 90% interest owner in Defendant Main Pass, and/or Albert W. Gunther, Jr., would be responsible for 90% of the drilling costs related to the Main Pass 21 Prospect and the Subject Well.[31]

Red Stick alleges Movants breached this agreement and Red Stick suffered damages as a result, and/or Red Stick reasonably relied on Movants' representations to its detriment.[32]

With respect to its veil piercing "claim," Red Stick alleges:

> Red Stick can recover directly from Albert W. Gunther, Jr. as well as Natrona, Dixie Management Services, L.L.C., Albert W. Gunther, Jr. and Martha Gunther as trustees of RE Trust, Old South Mechanical, L.L.C., Old South Ventures, L.L.C. (herein after collectively, the "Gunther Entities") and Albert W. Gunther, III because, upon information and belief, Defendant Albert W. Gunther, Jr., the Gunther Entities and/or other members or managers of the Gunther Entities improperly used the Gunther Entities and Defendant Main Pass to perpetrate an actual fraud on Red Stick primarily for their direct personal benefit by promising that Defendant Main Pass would purchase Red Stick's interest in the Main Pass 21 Prospect without the intent to follow through in the event the well was a dry hole.
>
> . . .

---

[28] R. Doc. 169 at ¶¶ 5, 8; R. Doc. 170 at ¶¶ 5, 8.
[29] R. Doc. 169 at ¶ 9; R. Doc. 170 at ¶ 9.
[30] R. Doc. 169; R. Doc. 170.
[31] R. Doc. 169 at ¶¶ 14-17, 18-22; R. Doc. 170 at ¶¶ 14-17, 18-22.
[32] *Id.*

Defendant Albert W. Gunther, Jr., the Gunther Entities and/or other members or managers of the Gunther Entities are so unified with each other and have misused the corporate form in such a way that the separate corporate structure of these entities and their members and managers has ceased and must be disregarded.[33]

In the instant motion, Movants first argue Red Stick's claims against them should be dismissed because Red Stick assigned all of the claims of Red Stick in this matter to Mack.[34]

Movants next argue Red Stick's breach of contract claim should be dismissed.[35] Movants argue Red Stick's breach of contract claim should be dismissed with respect to all Movants other than Main Pass because only Main Pass was a party to the proposed assignment from Red Stick to Main Pass.[36] Movants additionally argue the breach of contract claim should be dismissed with respect to all Movants because the proposed assignment was an oral agreement assigning mineral rights, and as a result is unenforceable.[37] Movants alternatively argue the breach of contract claim should be dismissed because the PA requires Mack's prior written consent to assign any working interest, and Red Stick did not obtain Mack's prior written consent to assign its interest to Main Pass.[38]

Next, with respect to all Movants other than Main Pass, Movants argue Red Stick's detrimental reliance claim should be dismissed because only Main Pass was a party to the proposed assignment from Red Stick to Main Pass.[39] With regards to Main Pass, Movants argue Red Stick's detrimental reliance claim should be dismissed because Red Stick's

---

[33] R. Doc. 169 at ¶¶ 24, 26; R. Doc. 170 at ¶¶ 24, 26.
[34] R. Doc. 181-1 at 15.
[35] *Id.*
[36] *Id.* at 16.
[37] *Id.* at 17.
[38] *Id.* at 19.
[39] *Id.* at 20-22.

alleged detriment is "not the result of a change in position by Main Pass 21, L.L.C., but rather Red Stick's own failure to obtain Mack's "prior written consent" to the proposed assignment."[40]

Lastly, with respect to Red Stick's pierce the veil claim, Movants argue Red Stick has not sufficiently alleged actual fraud, which is a requisite to piercing the corporate veil under Texas law.[41]

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[42] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[43] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[44] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[45] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[46]

---

[40] *Id.* at 23.
[41] *Id.* at 25.
[42] *Twombly*, 550 U.S. at 555; *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[44] *Id.*
[45] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[46] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[47] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[48] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[49] "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."[50]

## LAW AND ANALYSIS

### I. Assignment of Claims to Mack

Movants first argue Red Stick executed an agreement that "assigns all of the claims of Red Stick in this matter to Mack" and "[a]s a result, Red Stick no longer possesses any claims against Cross Claim Defendants or Third Party Defendants."[51] Since Movants filed the instant motion, Red Stick and Mack entered an addendum to the agreement nullifying the assignment of claims.[52] Accordingly, Movants' argument with respect to the assignment of claims is moot.

### II. Breach of Contract

With respect to Red Stick's breach of contract claim, Movants first argue Red Stick's breach of contract allegations involve only Red Stick's proposed assignment to Main Pass, and therefore, the remaining Movants cannot be held liable for breach of contract because no contract with them is alleged.[53] Movants misconstrue the claim. Red Stick's breach of contract claim is not based solely on Main Pass's failure to enter the

---

[47] *Twombly*, 550 U.S. at 555.
[48] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[49] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[50] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).
[51] R. Doc. 181-1 at 8.
[52] *See* R. Doc. 197-5.
[53] R. Doc. 181-1 at 16.

8

proposed assignment agreement. Instead, the claim is based on Defendants Main Pass, Natrona, Dixie, and Gunther, Jr.'s alleged oral agreement to form Main Pass, for Natrona to be a 90% owner of Main Pass, and for Natrona and Gunther, Jr. to supply the funds necessary to pay 90% of the costs.[54] Moreover, Red Stick alleges that more parties than just Main Pass were involved in the "agreement to enter the agreement." Specifically, in its Cross-Claim against Cross-Claim Defendants Main Pass and Gunther, Jr., Red Stick alleges:

> [I]n connection with the Main Pass 21 Prospect negotiations, Red Stick, Natrona and Defendant Main Pass, through Dixie Management Services, L.L.C., and Albert W. Gunther, Jr., agreed that Red Stick would assign all of its interest in the Main Pass 21 Prospect to Defendant Main Pass in order to shift all of the drilling costs and benefits attributable to Red Stick to Defendant Main Pass and its members such that Natrona, as a 90% interest owner in Defendant Main Pass, and/or Albert W. Gunther, Jr., would be responsible for 90% of the drilling costs related to the Main Pass 21 Prospect and the Subject Well.[55]

Similarly, in its Third-Party Complaint against Third-Party Defendants Natrona, Dixie, Gunther, Jr. and Martha Gunther as trustees of the RE Trust, OSM, OSV, and Gunther, III., Red Stick alleges:

> [I]n connection with the Main Pass 21 Prospect negotiations, Red Stick, Natrona and Defendant Main Pass, through Dixie Management Services, L.L.C., and Albert W. Gunther, Jr., agreed that Red Stick would assign all of its interest in the Main Pass 21 Prospect to Defendant Main Pass in order to shift all of the drilling costs and benefits attributable to Red Stick to Defendant Main Pass and its members such that Natrona, as a 90% interest owner in Defendant Main Pass, and/or Albert W. Gunther, Jr., would be responsible for 90% of the drilling costs related to the Main Pass 21 Prospect and the Subject Well.[56]

However, although Red Stick alleges only that Natrona, Main Pass, Dixie, and Gunther, Jr. were parties to the agreement to enter the agreement, Red Stick seeks to hold "Defendant Main Pass, Albert W. Gunther, Jr., and *all Third-Party Defendants*" liable for

---

[54] R. Doc. 169 at ¶ 14; R. Doc. 170 at ¶ 14.
[55] R. Doc. 169 at ¶ 14.
[56] R. Doc. 170 at ¶ 14.

breach of contract.[57] Red Stick clearly has not alleged OSM, OSV, Gunther, III, and Martha Gunther as trustee of the RE Trust, entered into and breached an agreement with Red Stick. Accordingly, to the extent Red Stick brings breach of contract claims against OSM, OSV, Gunther, III, and Martha Gunther as trustee of the RE Trust, the motion to dismiss is granted and these claims are dismissed. Red Stick did name Gunther, Jr., but it is not clear whether he is named only in his individual capacity or also in his capacity as trustee of the RE Trust. For purposes of the motion to dismiss, the Court must take Red Stick's allegations as true,[58] and draw all inferences in favor of Red Stick.[59] As a result, although a close question, drawing all inferences in favor of Red Stick, the Court finds Red Stick has alleged Gunther, Jr. entered into and breached an agreement with Red Stick, in his individual capacity and/or in his capacity as trustee of the RE Trust.

Movants also argue Red Stick's breach of contract claim should be dismissed in its entirety because the agreement had to be in writing to be enforceable, and the alleged agreement regarding the assignment was an oral agreement. Specifically, Movants argue Louisiana Civil Code article 1839 prohibits oral agreements assigning mineral rights and working interests, and, as a result, Red Stick's breach of contract claims are based upon an invalid oral assignment.[60] However, Red Stick's breach of contract claims are based on an agreement to form Main Pass, for Natrona to be a 90% owner of Main Pass, and for

---

[57] R. Doc. 170 at ¶ 16 (emphasis added).
[58] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004) ("In considering a motion to dismiss, the district court must take the facts as alleged in the complaint as true, and may not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585-86 (5th Cir. 1999)).
[59] *See, e.g.*, *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) ("When considering a Rule 12(b)(6) dismissal, we construe the complaint liberally in favor of the plaintiff, taking all facts as true." (citing *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).
[60] R. Doc. 181-1 at 17 (citing La. Civ. Code art. 1839).

Natrona and Gunther, Jr. to supply the funds necessary to pay 90% of the costs.[61] The alleged agreement is not an assignment of a mineral right or a working interest. Accordingly, Movants' reliance on the writing requirement of article 1839 is misplaced, and Red Stick's breach of contract claim will not be dismissed for lack of a writing.

Movants additionally argue the proposed assignment is unenforceable because the PA between Mack and Red Stick requires Mack's "prior written consent" to any assignment of any working interest, and Mack did not provide any written consent to Red Stick before Red Stick assigned its working interest to Main Pass.[62] The PA provides:

> Prior to the drilling of the [Well] Buyers shall not assign this Agreement or any of its rights or obligations under this Agreement without obtaining the prior written consent of Seller . . . [63]

Whether Mack consented to the proposed assignment, or not, is irrelevant to the claims brought by Red Stick. The assignment never took place, and as a result Mack's "prior written consent" is irrelevant. Red Stick's breach of contract claims are based on an alleged agreement to form Main Pass, for Natrona to be a 90% owner of Main Pass, and for Natrona and Gunther, Jr. to supply the funds necessary to pay 90% of the costs.[64] Red Stick alleges the agreement to form Main Pass, and for Natrona and Gunther, Jr. to supply the funds necessary to pay 90% of the costs, was breached. As a result, Red Stick argues there was no assignment and consent by Mack never became an issue. The Court finds this argument is correct.

---

[61] R. Doc. 169 at ¶ 14; R. Doc. 170 at ¶ 14.
[62] R. Doc. 181-1 at 19 (citing R. Doc. 97-4 at 8 (Article IX, General Provisions, ¶ 3, Assignment of Agreement)).
[63] R. Doc. 97-4 at 8.
[64] R. Doc. 169 at ¶ 14; R. Doc. 170 at ¶ 14.

Accordingly, Movants' motion to dismiss Red Stick's breach of contract claim against Natrona, Main Pass, Dixie, and Gunther, Jr., in his individual capacity and in his capacity as trustee of the RE trust, is denied.

## III. Detrimental Reliance

Just as Movants argued with respect to Red Stick's breach of contract claim, Movants argue Red Stick's detrimental reliance allegations involve only Red Stick's proposed assignment to Main Pass, and therefore, the remaining Movants cannot be held liable for detrimental reliance.[65] Again, Movants misconstrue the basis of the claim. Red Stick's detrimental reliance claim is based on representations to Red Stick that Main Pass would be formed, Red Stick's interest would be assigned to Main Pass, and "Natrona, Albert W. Gunther, Jr. and/or its members [would be] responsible for 90% of the costs claimed by Mack."[66] Red Stick alleges that parties in addition to Main Pass were involved in the "promise to agree." Specifically, in its Cross-Claim against Cross-Claim Defendants Main Pass and Gunther, Jr., Red Stick alleges:

> [I]n connection with the Main Pass 21 Prospect negotiations, Red Stick, Natrona and Defendant Main Pass, through Dixie Management Services, L.L.C., and Albert W. Gunther, Jr., agreed that Red Stick would assign all of its interest in the Main Pass 21 Prospect to Defendant Main Pass in order to shift all of the drilling costs and benefits attributable to Red Stick to Defendant Main Pass and its members such that Albert W. Gunther, Jr., individually and/or through Natrona, as a 90% interest owner in Defendant Main Pass, would be responsible for 90% of drilling costs. Defendant Main Pass and Albert W. Gunther, Jr., now refuse to contribute to drilling costs in accordance with this agreement despite demands by Mack and/or Red Stick.[67]

---

[65] R. Doc. 181-1 at 21.
[66] R. Doc. 169 at ¶¶ 5, 8; R. Doc. 170 at ¶¶ 5, 8.
[67] R. Doc. 169 at ¶ 19.

12

Similarly, in its Third-Party Complaint against Third-Party Defendants Natrona, Dixie, Gunther, Jr. and Martha Gunther as trustees of the RE Trust, OSM, OSV, and Gunther, III., Red Stick alleges:

> [I]n connection with the Main Pass 21 Prospect negotiations, Red Stick, Natrona and Defendant Main Pass, through Dixie Management Services, L.L.C., and Albert W. Gunther, Jr., agreed that Red Stick would assign all of its interest in the Main Pass 21 Prospect to Defendant Main Pass in order to shift all of the drilling costs and benefits attributable to Red Stick to Defendant Main Pass and its members such that Albert W. Gunther, Jr., individually and/or through Natrona, as a 90% interest owner in Defendant Main Pass, would be responsible for 90% of drilling costs. Defendant Main Pass, Natrona, Dixie Management Services, L.L.C. and Albert W. Gunther, Jr., now refuse to contribute to drilling costs in accordance with this agreement despite demands by Mack and/or Red Stick.[68]

Although Red Stick alleges only that Natrona, Main Pass, Dixie, and Gunther, Jr. made promises to Red Stick, Red Stick also seeks to hold "*Third-Party Defendants*" liable for detrimental reliance.[69] Red Stick clearly has not alleged OSM, OSV, Gunther, III, and Martha Gunther as trustee of the RE Trust were involved in any promises made to Red Stick. Accordingly, to the extent Red Stick brings detrimental reliance claims against OSM, OSV, Gunther, III, and Martha Gunther as trustee of the RE Trust, the motion to dismiss is granted and these claims are dismissed. For purposes of the motion to dismiss, and drawing all inferences in favor of Red Stick, Red Stick has alleged sufficient facts to support its detrimental reliance claim against Gunther, Jr. individually and as a trustee of the RE trust.

Movants also argue Red Stick's detrimental reliance claim should be dismissed in its entirety as "detrimental reliance requires 'a change in position to the plaintiff's detriment as a result of the reliance,'" but "[t]he change in Red Stick's position is not a

---

[68] R. Doc. 170 at ¶ 19.
[69] R. Doc. 170 at ¶ 20 (emphasis added).

result of any reliance, but rather a result of the failure of Red Stick to obtain the 'prior written consent' of Mack required by the Participation Agreement."[70] Mack's prior written consent is irrelevant as the assignment never occurred. Further, on a motion to dismiss, courts accept as true the factual allegations as pleaded.[71] Red Stick has alleged "the above promises . . . induce[d] Red Stick to rely on them to its detriment because Red Stick . . . acquir[ed] its interest in the Main Pass Prospect based on this agreement, which was intended to reduce Red Stick's potential liability for drilling costs."[72] Red Stick's allegations contain sufficient factual matter, accepted as true, to state a detrimental reliance claim that is plausible on its face. Accordingly, the Court denies Movants' motion to dismiss Red Stick's detrimental reliance claim against Natrona, Main Pass, Dixie, and Gunther, Jr., in his individual capacity and in his capacity as trustee of the RE Trust.

## IV. Piercing the Corporate Veil

Movants allege "Red Stick fails to adequately plead the doctrine of piercing the corporate veil" and seek dismissal of this claim against all Movants.[73] Specifically, Movants argue Texas law applies to Red Stick's veil piercing claims, Texas law requires a showing of "actual fraud" to pierce the corporate veil, and Red Stick has failed to properly plead actual fraud.[74]

As a preliminary matter, the Court notes a request to pierce the corporate veil is not an independent cause of action "but rather is a means of imposing liability on an

---

[70] R. Doc. 181-1 at 22.
[71] *See Iqbal*, 556 U.S. at 678 (2009).
[72] R. Doc. 169 at ¶ 20; R. Doc. 170 at ¶ 20.
[73] R. Doc. 181-1 at 23.
[74] *Id.* at 23-25.

14

underlying cause of action."[75] If a plaintiff successfully pierces the corporate veil of a limited liability company, the plaintiff may hold individual members of the limited liability company liable for actions of the limited liability company.[76] Likewise, a limited liability corporation can be held liable for the actions of its members if the plaintiff successfully pierces the corporate veil in reverse.[77] Thus, Red Stick's veil piercing claim is a means by which Red Stick seeks to hold Movants directly liable for damages caused by the underlying breach of contract and detrimental reliance claims against entities or individuals with which the Movants are affiliated.[78] In this case, Red Stick alleges underlying causes of action, namely, breach of contract and detrimental reliance.

Movants argue Red Stick's veil piercing claims should be dismissed against all Movants because Red Stick did not allege actual fraud.[79] "Actual fraud" must be established to pierce the veil under Texas law. However, Louisiana law does not require a finding of fraud in order to pierce the corporate veil in a contract action.[80] "[W]hen fraud is not alleged, a plaintiff seeking to pierce the corporate veil bears a heavy burden of proof in demonstrating that the corporate form has been disregarded, but [] Louisiana law indicates that the corporate veil may be pierced without the presence of fraud."[81] Thus, in order to address the sufficiency of Red Stick's allegations with respect to piercing the

---

[75] *Peacock v. Thomas*, 516 U.S. 349, 354 (1996); *see also In re Grothues*, 266 F.3d 334, 337–38 (5th Cir. 2000) (recognizing that the alter ego theory is a remedy to enforce a substantive right, not an independent cause of action).
[76] *See, e.g., Martin v. Spring Break 83 Production, LLC*, 797 F.Supp.2d 719, 724-25 (E.D. La. 2011).
[77] *See, e.g., In re Moore*, 608 F.3d 253, 257 (5th Cir. 2010).
[78] "[I]f a complaint attempts only to state a veil-piercing claim, and not an underlying cause of action, it must be dismissed." *Meyer v. Bayles*, Civil Action No. 12–0043, 2012 WL 2522896, at *4 n.4 (W.D. La. May 31, 2012) (citations omitted), *adopted* 2012 WL 2513511 (W.D. LA. June 28, 2012).
[79] R. Doc. 181-1 at 25-27.
[80] *Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 386 (5th Cir. 2000) ("Even if the defendants are correct that a WARN action is most akin to a contract action, they are mistaken that Louisiana law requires a finding of fraud in order to pierce the corporate veil in a contract action.").
[81] *Id.* (internal quotation marks and citation omitted).

corporate veil, the Court must first determine which state's law governs the issue. "Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry."[82] Otherwise, they cannot. For instance, in *Floyd v. CIBC World Markets, Inc.*, the United States District Court for the Southern District of Texas declined to decide choice of law on a motion to dismiss because "[t]he Court lacks evidence at this stage of the proceedings to properly analyze all the Restatement factors," which courts in Texas analyze to determine the governing law.[83] By contrast, in *Energy Coal, S.p.A. v. CITGO Petroleum Corp.*, the United States District Court for the Western District of Louisiana found it appropriate to decide choice of law on a motion to dismiss because:

> [T]he issue is fully briefed and no further factual development is necessary. [The plaintiff's] petition and motion papers exhaustively detail the parties' relationships with the candidate states and the dispute. [The defendant] does not dispute the accuracy of Energy Coal's factual assertions, and instead only disputes that those facts establish that Louisiana law governs. Accordingly, the court finds that there are no unknown facts which could alter the conflict-of-laws analysis.[84]

When jurisdiction is based on diversity of citizenship, the law of the forum state governs the choice of law inquiry.[85] Louisiana Civil Code article 3515 "sets forth the general principles from which the more specific conflict articles derive. Thus, if any other article is found to be applicable to a particular case or issue, that article prevails."[86] Article 3537 is the more specific article that applies to a breach of an obligation. Article 3537 provides:

---

[82] *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) (citing *Fortune v. Taylor Fortune Grp., LLC*, 620 F. App'x. 246, 247–48 (5th Cir. 2015)).
[83] 426 B.R. 622, 641 (S.D. Tex. 2009).
[84] No. 2:14–CV–03092, 2015 WL 5123867, at *2 n.5 (W.D. La. Aug. 31, 2015).
[85] *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).
[86] *NorAm Drilling Co. v. E & PCo Intern., LLC*, 131 So.3d 926, 929 (La. App. 2 Cir. 2013).

16

Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[87]

The "policies referred to in Article 3515" include:

[T]he policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.[88]

In this case, the parties have not fully discovered or briefed the parties' relationships with the candidate states, Texas and Louisiana. Neither have they briefed the relationship of the alleged agreement to the forum state; the nature and purpose of the alleged agreement and how the nature and purpose weigh towards application of one candidate state's laws over another; how application of one state's law over another's is compatible with the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state; or how application of one state's law over another's is compatible with the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

---

[87] La. Civ. Code art. 3537.
[88] La. Civ. Code art 3515.

Like *Floyd*, in this case the Court has been provided insufficient information to properly analyze the article 3537 factors. Accordingly, it is premature to determine the governing law at this stage. The motion to dismiss is denied.

Finally, the fact that the Court has dismissed Red Stick's direct breach of contract and detrimental reliance claims against Martha Gunther as trustee of RE Trust, Old South Mechanical, L.L.C., Old South Ventures, L.L.C., and Albert W. Gunther, III does *not* mean Red Stick cannot attempt to recover from these Third-Party Defendants by piercing the corporate veil.

The motion to dismiss is denied with respect to all Movants.

## CONCLUSION

**IT IS ORDERED** that Movants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that, to the extent Red Stick brings breach of contract and detrimental reliance claims against Martha Gunther as trustee of RE Trust, Old South Mechanical, L.L.C., Old South Ventures, L.L.C., and Albert W. Gunther, III, Movants' motion is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE**.[89]

**IT IS FURTHER ORDERED** that Movants' motion to dismiss Red Stick's veil piercing claims as to Cross-Claim Defendants Main Pass 21, L.L.C and Albert W. Gunther, Jr.; and Third-Party Defendants, Dixie Management Services, L.L.C., Natrona Resources, L.L.C., Old South Mechanical, L.L.C., Old South Ventures, L.L.C., Albert W. Gunther, III,

---

[89] Red Stick has already been given an opportunity to amend its crossclaim and third party complaint. *See* R. Doc. 169 (Amended Crossclaim) and R. Doc. 170 (Second Amended Third Party Complaint).

Albert W. Gunther, Jr., as trustee of The RE Trust, and Martha Gunther, as trustee of The RE Trust, is **DENIED**.

**IT IS FURTHER ORDERED** that Movants' motion to dismiss Red Stick's breach of contract and detrimental reliance claims against Natrona, Main Pass, Dixie, and Albert Gunther, Jr., in his individual capacity and in his capacity as trustee of the RE Trust, is **DENIED**.

**New Orleans, Louisiana, this 2nd day of October, 2019.**

                                                **SUSIE MORGAN**
                                   **UNITED STATES DISTRICT JUDGE**